UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIN F. MURRAY AS EXECUTRIX AND
PERSONAL REPRESENTATIVE
OF THE ESTATE OF TIMOTHY M.
MURRAY,

                              Plaintiff,                              21-CV-3360 (TMR)

          -against-                                              **OPINION & ORDER**

AET INC. LTD., *in personam* and the
MV EAGLE TURIN, *in rem*,

                              Defendants.

---

TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by
Designation:

Before the court is a motion by defendants AET INC. LTD. ("AET") and MV

EAGLE TURIN ("EAGLE TURIN" and together with AET "defendants") to dismiss

the amended complaint of Erin F. Murray ("plaintiff") for failure to state a claim

under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and to strike plaintiff's jury

demand under FRCP 38(e).[1]  Notice of Mot. Dismiss Am. Compl. and Strike Jury

Demand at 1, ECF No. 19.

---

[1] In addition, defendants request costs and fees.  Mem. L. Supp. Mot. Dismiss Pl.'s
Am. Compl. and Strike Jury Trial Demand ("Def. Mem.") at 2, ECF No. 21.

For the reasons that follow, the court grants in part and denies in part defendants' motion to dismiss and grants defendants' motion to strike plaintiff's jury demand.

## BACKGROUND

Plaintiff is the widow, executrix and personal representative of the estate of Captain Timothy M. Murray ("decedent"), a professional sea pilot, who died after falling from a pilot ladder on the side of the EAGLE TURIN on August 5, 2020 ("Accident"), Verified Am. Compl. ¶¶ 5-7, ECF No. 14, at a distance of approximately seven nautical miles from the shore of New York, Affirmation of Thomas M. Canevari, Esq. Supp. Mot. Dismiss Am. Compl. and Strike Jury Demand ("Def. Affirmation"), Ex. H, ECF No. 20-8; *see also* Def. Affirmation ¶ 9, ECF No. 20.  Plaintiff does not specify this distance in the amended complaint. Instead, on July 16, 2021, defendants presented an exhibit that depicts data from the EAGLE TURIN and pilot boat AMERICA that indicates the approximate location of the Accident on National Oceanic and Atmospheric Administration ("NOAA") charts.  *See* Def. Affirmation, Ex. H; *see also* Def. Affirmation ¶ 9.

On September 14, 2021, plaintiff submitted an exhibit that consisted of a stipulation dated August 30, 2021 ("Stipulation"), in which the parties stipulated to and agreed: "The [A]ccident leading to death of Captain Timothy Murray occurred at a distance of approximately 7 nautical miles off the shore of New York at or near the Pilot Station as designated on the official NOAA Charts."  Aff. of Ralph J. Mellusi Supp. Opp'n to Mot. Dismiss Am. Compl. and Strike Jury Demand ("Pl.

Aff."), Ex. 1 ¶ 1, ECF No. 26-1.  The court so ordered the Stipulation on August 26, 2022.  Stipulation, Aug. 26, 2022, ECF No. 29.  The court takes judicial notice of the location of the Accident pursuant to Federal Rule of Evidence 201(b)(2) based on the incontrovertible location data for the EAGLE TURIN and AMERICA during the time of the Accident plotted by defendants on NOAA charts filed as an exhibit in this court.  *See* Def. Affirmation ¶ 9 and Ex. H.[2] [3]  *See generally Dixon v. von Blanckensee*, 994 F.3d 95, 101-02 (2d Cir. 2021) ("When ruling on a Rule 12(b)(6) motion, [the court] may also consider 'matters of which a court may take judicial notice.'" (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))).  The court also takes note that the parties agree on the location of the Accident, as stated in the Stipulation.  *See* Stipulation ¶ 1.

On April 16, 2021, plaintiff filed the original complaint.  Verified Compl., ECF No. 1.  Following a motion to dismiss the complaint from defendants, the court

---

[2] Defendants' exhibit depicts Global Positioning System data recorded by the Voyage Data Recorder of the location of the EAGLE TURIN and the location broadcast by the AMERICA between 22:28 and 22:33 on August 5, 2020, on several excerpts of NOAA charts, which indicate the approximate location of the Accident. Def. Affirmation, Ex. H.  *See generally* Voyage Data Recorders, Int'l Maritime Org., https://www.imo.org/en/OurWork/Safety/Pages/VDR.aspx (last visited May 3, 2022). Moreover, the locations of the ships could be verified by looking to vessel traffic data from the U.S. Coast Guard for the date and time of the Accident.  *See* Def. Affirmation ¶ 9.  *See generally* Vessel Traffic Data, MarineCadastre.gov, https://marinecadastre.gov/ais/ (last visited May 3, 2022).  The NOAA charts note that the Accident occurred 6.9 nautical miles from land in New York and 7.5 nautical miles from land in New Jersey.  Def. Affirmation ¶ 9 and Ex. H at 4-5.

[3] Federal Rule of Evidence 201(b)(2), which pertains to judicial notice of adjudicative facts, states: "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

ordered that an amended complaint be filed by June 28, 2021.  Order, June 8, 2021,

ECF No. 12; *see* Notice of Mot.  Dismiss and Strike Jury Demand, ECF No. 9.  On

June 26, 2021, plaintiff filed the amended complaint.  Verified Am. Compl., ECF No.

14.[4]

In the amended complaint, plaintiff alleges that the Accident occurred

"within the jurisdiction and territorial waters of the State of New York, and the

United States of America."  *Id.* ¶ 4.

Plaintiff brings four causes of action in the amended complaint.  *Id.* at 15-23.

First, under diversity jurisdiction, 28 U.S.C. § 1332, and alleging

unseaworthiness and unseaworthiness per se, plaintiff asserts a cause of action for:

(1) wrongful death under general maritime law, including *Moragne v. States Marine

Lines*, 398 U.S. 375 (1970); (2) survival under general maritime law; (3) wrongful

death under New York's wrongful death statute, N.Y. Est. Powers & Trusts Law

("EPTL") § 5-4.1 (McKinney 2022); and (4) survival under New York law.  Verified

Am. Compl. at 15; *id.* ¶¶ 2, 80-94.[5]

Second, under diversity jurisdiction, 28 U.S.C. § 1332, and alleging

negligence and negligence per se, plaintiff asserts a cause of action for: (1) wrongful

death under general maritime law, including *Moragne*; (2) survival under general

---

[4] Defendants' first motion to dismiss was deemed moot due to the filing of the
amended complaint.  *See* Order, July 2, 2021, ECF No. 17.  Defendants filed
subsequently a second motion to dismiss, which is before the court.  Notice of Mot.
Dismiss Am. Compl. and Strike Jury Demand, ECF No. 19.

[5] In each survival claim, plaintiff references "decedent's pre-death fear, fright,
conscious pain and suffering."  Verified Am. Compl. ¶¶ 91, 94, 99, 101, 112.

maritime law; (3) wrongful death under EPTL § 5-4.1; and (4) survival under New York law.  Verified Am. Compl. at 20; *id.* ¶¶ 2, 95-101.

Third, under 28 U.S.C. § 1333, plaintiff asserts a cause of action in the alternative for wrongful death, alleging negligence, negligence per se, unseaworthiness and unseaworthiness per se, under the Death on the High Seas Act ("DOHSA" or the "Act").[6]  *Id.* ¶¶ 1-2, 102-08; *see* 46 U.S.C. §§ 30301-30308.

Fourth, under 28 U.S.C. § 1333 and DOHSA, plaintiff also brings an *in rem* cause of action against the EAGLE TURIN for wrongful death and survival based on a maritime lien, alleging negligence, negligence per se, unseaworthiness and unseaworthiness per se.[7]  Verified Am. Compl. at 22; *id.* ¶¶ 1, 109-112.

Plaintiff also asserts that the court has subject matter jurisdiction under 28 U.S.C. § 1332 and 28 U.S.C. § 1333 and DOHSA against AET and jurisdiction under 28 U.S.C. § 1333 and DOHSA against the EAGLE TURIN.[8]  *Id.* ¶ 1.  In addition, plaintiff asserts that the court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims.  *Id.*

---

[6] Plaintiff alleges that DOHSA does not apply under *In re Air Crash Off Long Island* ("*Long Island*"), 209 F.3d 200 (2d Cir. 2000), and 46 U.S.C. § 30308 because the decedent's death occurred in New York's territorial waters; however, in the event that the court determines DOHSA to be applicable, plaintiff brings this third claim in the alternative under 28 U.S.C. § 1333 "since the occurrence causing the death happened on navigable waters while decedent was engaged in maritime commerce." Verified Am. Compl. ¶¶ 1-2, 103-04.

[7] Plaintiff states: "The [Letter of Undertaking] stands as substitute security for plaintiff's *in rem* claims."  *Id.* ¶ 3.

[8] AET is a Bermudian corporation and owner of the EAGLE TURIN, a Singapore-flagged vessel.  *Id.* ¶¶ 9-10, 13.

Plaintiff asserts personal jurisdiction *in rem* over the EAGLE TURIN and *in personam* over AET based on the prior agreement by United Kingdom Mutual Steam Ship Assurance Association (Europe) Limited (the "Association") to appear. *Id.* ¶ 3; *see* Pl. Aff., Ex. 2 [hereinafter Letter of Undertaking ("LOU")].[9]  Plaintiff asserts further: "In addition, the cause of action arose within the territorial waters of New York."  Verified Am. Compl. ¶ 3.

Plaintiff also demands a trial by jury.  *Id.* at 1.

---

[9] On August 31, 2020, the Association agreed in relevant part, in consideration for plaintiff not arresting, attaching or seizing the EAGLE TURIN:

> To file or cause to be filed upon your demand an appearance on behalf of the Vessel and/or Owners in one suit you may commence against the Vessel in rem and Owners in personam solely in the U.S. District Court for the Southern District of New York ("Court") seeking damages allegedly arising out of or in relation to the Claims, which court shall have exclusive jurisdiction over the Claims, but provided that the filing of such appearances shall not constitute a waiver of any rights, defenses or limitations available to the Vessel and/or Owners, all of which are to be considered preserved, with the exception of a defense of lack of in personam or in rem jurisdiction, to which said jurisdiction Vessel and/or Owners consent.

Aff. of Ralph J. Mellusi Supp. Opp'n to Mot. Dismiss Am. Compl. and Strike Jury Demand, Ex. 2 ¶ 1, ECF No. 26-1 [hereinafter Letter of Undertaking ("LOU")].  The LOU provides for up to $19,900,000 in damages in the event of a final judgment.  *Id.* ¶ 2.  The LOU provides further:

> This agreement shall be governed by the general maritime law of the United States. Any disputes concerning this agreement shall be submitted to the exclusive jurisdiction of the United States District Court for the Southern District of New York, to whose jurisdiction the parties hereby submit for this limited purpose.

*Id.* ¶ 7.

Defendants argue that the court should dismiss the amended complaint and strike the jury demand. Def. Mem. Mem. L. Supp. Mot. Dismiss Pl.'s Am. Compl. and Strike Jury Trial Demand ("Def. Mem.") at 3-4, ECF No. 21. Defendants present four main arguments in response to plaintiff's amended complaint:

(1) Defendants allege improper pleading of the state and general maritime law claims because defendants assert that plaintiff's only possible remedy is under DOHSA. Def. Mem. at 1, 3; *see* 46 U.S.C. §§ 30301-30308.

(2) In addition, defendants argue that the court should dismiss the DOHSA claim due to improper pleading. Def. Mem. at 3.

(3) Further, defendants allege that the court should dismiss the *in rem* claim due to a failure to designate the claims under admiralty jurisdiction as admiralty and maritime claims, a lack of invocation of FRCP Rule 9(h), a lack of "valid causes of action [for the *in rem* claim] to attach to," and because *in rem* jurisdiction over the EAGLE TURIN is improper. *Id.* at 3-4, 19.

(4) Finally, defendants allege that plaintiff cannot obtain a trial by jury because plaintiff's only claim is under DOHSA and so must be brought in admiralty and, therefore, without a jury. *Id.* at 3, 21.

On September 14, 2021, plaintiff filed a memorandum in opposition to defendants' motion to dismiss. Mem. L. in Opp'n Mot. Dismiss ("Pl. Mem."), ECF No. 26. On October 5, 2021, defendants filed a reply in support of the earlier motion. Reply Mem. L. Supp. Mot. Dismiss Pl.'s Am. Compl. and Strike Jury Trial Demand ("Def. Reply Mem."), ECF No. 28.

## LEGAL FRAMEWORK

Under FRCP 8(a), pleadings must contain "short and plain" statements of jurisdiction and entitlement to relief, as well as a demand for relief.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Taken as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  Further, a claim must be "plausible" and provide more than "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  "The court is to draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

In addition, FRCP 9(h) describes the circumstances under which a claim may be designated as an admiralty or maritime claim:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, *whether or not so designated*.

Fed. R. Civ. P. 9(h)(1) (emphasis supplied).

**DISCUSSION**

Defendants' motion to dismiss presents two main issues pertaining to

DOHSA, 46 U.S.C. §§ 30301-30308.  The first issue is whether DOHSA applies to

the Accident that occurred seven miles from shore.  *See* Stipulation ¶ 1.  If DOHSA

applies, the second issue relates to which of plaintiff's claims can proceed.  In

addition, the court addresses defendants' arguments pertaining to plaintiff's

pleading of claims and jury demand.

DOHSA, which was enacted in 1920, provides:

> When the death of an individual is caused by wrongful act, neglect, or
> default occurring on the high seas beyond 3 nautical miles from the
> shore of the United States, the personal representative of the decedent
> may bring a civil action in admiralty against the person or vessel
> responsible. The action shall be for the exclusive benefit of the
> decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302 (originally enacted as Act of Mar. 30, 1920, ch. 111, § 1, 41

Stat. 537, codified as amended at 46 U.S.C. app. § 761(a)) (revising 46 U.S.C.

app. § 761(a)).

## I.     Whether DOHSA applies

### A.     Positions of the parties

Since the Accident occurred more than three nautical miles from shore,

defendants assert that plaintiff's first and second claims under general maritime

law and state law should be dismissed because DOHSA provides the "exclusive

remedy," thereby barring other claims in diversity.  Def. Mem. at 3-5.

Defendants' argument rests on the notion that DOHSA, 46 U.S.C. § 30302,

starts to apply at three nautical miles from shore and continues seaward.  Def.

Mem. at 6.  Defendants base this interpretation on the language of the statute, in addition to *Offshore Logistics v. Tallentire*, 477 U.S. 207 (1986), and case law from the Courts of Appeal for the Fifth and Ninth Circuits ("Fifth Circuit" and "Ninth Circuit," respectively).  Def. Mem. at 6-9 (citing *Tallentire*, 477 U.S. at 214-15 ("Congress enacted DOHSA, . . . providing for a federal maritime remedy for wrongful deaths more than three miles from shore.") (alteration in original); *Bodden v. Am. Offshore, Inc.*, 681 F.2d 319, 329 (5th Cir. 1982) ("When the incident takes place outside the three-mile limit, DOHSA and DOHSA alone controls."); *Helman v. Alcoa Glob. Fasteners, Inc.*, 637 F.3d 986, 990-91 (9th Cir. 2011)).

Defendants note that the language of 46 U.S.C. § 30302, which revised 46 U.S.C. app. § 761, was enacted in 2006 and rely on the reasoning of the Ninth Circuit in *Helman* with regard to the 2006 amendments and additional DOHSA amendments in 2000 pertaining to commercial aircraft accidents to assert that "Congress also reinforced the applicability of the DOHSA as three nautical miles from shore."[10]  *Id.* at 6-8 (citing *Helman*, 637 F.3d at 991-93); *see* 46 U.S.C. §§ 30302, 30307 (revising 46 U.S.C. app. §§ 761(a)-(b), 762(b)(1)-(2)); *see also* Def.

---

[10] In 2000, Congress amended DOHSA, as codified at 46 U.S.C. app. §§ 761-767. *See* Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, title IV, § 404, 114 Stat. 131 (2000).  In 2006, Congress repealed and restated DOHSA in 46 U.S.C. ch. 303.  *See* Act of Oct. 6, 2006, Pub. L. No. 109-304, § 6(c), 120 Stat. 1511 (codified at 46 U.S.C. §§ 30301-30308).  For simplicity, this opinion refers to both the 2000 and 2006 changes to DOHSA as "amendments" and to DOHSA, "as amended."  These amendments are discussed *infra* Section I.B.1.b.

Reply Mem. at 4-5 (explaining the *Helman* court's three rationales for concluding that DOHSA applied under § 30302 from three nautical miles seaward).

Defendants quote at length from *Helman*, which the Ninth Circuit decided on interlocutory appeal. Def. Mem. at 6-9; *Helman*, 637 F.3d at 988. The court concluded that DOHSA applied to a military helicopter crash 9.5 nautical miles off the coast of California. *See Helman*, 637 F.3d at 988, 993. Defendants recount that the court *inter alia*: (1) referred to a presidential proclamation of December 27, 1988 ("Proclamation 5928"),[11] stating that it did not change extant federal or state laws or jurisdiction; (2) noted that Congress amended another maritime statute to account specifically for Proclamation 5928, but did not similarly amend DOHSA; and (3) postdated the DOHSA amendments, which, defendants argue, "remov[ed]

---

[11] A presidential proclamation of December 27, 1988 ("Proclamation 5928"), stated that the U.S. "territorial sea . . . extends to 12 nautical miles from the baseline of the United States determined in accordance with international law." Proclamation No. 5928, 54 Fed. Reg. 777 (Jan. 9, 1989). Proclamation 5928 stipulated: "Nothing in this Proclamation: (a) extends or otherwise alters existing Federal or State law or any jurisdiction, rights, legal interests, or obligations derived therefrom . . . ." *Id.*

In addition, a presidential proclamation of August 2, 1999 ("Proclamation 7219"), established a 24-nautical-mile "contiguous zone," as measured from the U.S. baselines "in which the United States may exercise the control necessary to prevent infringement of its customs, fiscal, immigration, or sanitary laws and regulations within its territory or territorial sea, and to punish infringement of the above laws and regulations committed within its territory or territorial sea." Proclamation No. 7219, 64 Fed. Reg. 48,701 (Aug. 8, 1999). Proclamation 7219 stipulated also: "Nothing in this proclamation: (a) amends existing Federal or State law." *Id.* The *Long Island* court did not consider Proclamation 7219 since it postdated the Trans World Airlines ("TWA") Flight 800 crash. *Long Island*, 209 F.3d at 202 n.3. Regardless, Proclamation 7219 did not extend the territorial sea or territorial waters and is therefore irrelevant to the court's consideration of the Accident in this case, which occurred also within 12 nautical miles from shore.

any ambiguity that DOHSA applies beyond three nautical miles from land." Def.

Mem. at 6-9 (citing *Helman*, 637 F.3d at 991-93); *see Helman*, 637 F.3d at 991-93

(citing Coast Guard Authorization Act of 1998, Pub. L. No. 105-383, § 301 (1998)).

Due to the amendments, defendants argue against reference to the earlier language

of DOHSA under 46 U.S.C. app. § 761 (amended 2000) (current version at 46 U.S.C.

§ 30302), which was considered by the U.S. Court of Appeals for the Second Circuit

("Second Circuit") in *In re Air Crash off Long Island* ("*Long Island*"), 209 F.3d 200

(2d Cir. 2000). Def. Reply Mem. at 1; *see* Wendell H. Ford Aviation Investment and

Reform Act for the 21st Century, Pub. L. No. 106-181, title IV, § 404(a), 114 Stat.

131 (2000); Act of Oct. 6, 2006, Pub. L. No. 109-304, § 6(c), 120 Stat. 1511.

Defendants argue that *Long Island*, cited by plaintiff in paragraph 103 of the

amended complaint, no longer controls based on the plain language of § 30302 and

following the amendments to DOHSA:

> What Plaintiff has failed to explain, however, is how a Second Circuit
> case from 2000 with respect to a commercial aviation accident, which
> itself gave rise to an amendment to the statute retroactive to before that
> decision, together with further clarifying amendments in 2006, governs
> this maritime accident which occurred in June of 2020 where both the
> plain text and the context of the amendments demonstrate that the state
> of the law is different today than it was in 2000.

Def. Reply Mem. at 8. Defendants argue that "[p]laintiff would substitute twelve

nautical miles for the unambiguous statement by Congress in 2006 that DOHSA

applies beyond three nautical miles. This [substitution] reads 'high seas' as being

12 miles, and reads 'three nautical miles' out of the statute." *Id.* Defendants assert:

"Congress amended the statute, the language is clear, and *Long Island* did not

interpret the language of the current statute or assess the effect of the

amendments." *Id.*

Defendants also quote the Supreme Court's decision in *Tallentire*, which

stated that § 7 of DOHSA, 46 U.S.C. § app. 767 (amended 2000) (current version at

46 U.S.C. § 30308), "extended the jurisdictional saving clause to the high seas but in

doing so, it did not implicitly sanction the operation of state wrongful death statutes

on the high seas in the same manner as the saving clause did in territorial waters."

*Id.* at 5 (quoting *Tallentire*, 477 U.S. at 227); *see also Yamaha Motor Corp., U.S.A. v.*

*Calhoun*, 516 U.S. 199, 215-16 (1996) (stating that § 7, "by its terms, simply stops

DOHSA from displacing state law in territorial waters" (citations omitted)).  *See*

*generally* 46 U.S.C. § 30308 (providing related language in the current law).

On the limit of New York's waters, defendants also assert that "[n]either New

York State nor the United States recognize [sic] New York waters as extending

beyond three miles."  Def. Reply Mem. at 6.[12]  As to the two cases cited by plaintiff

involving Texas and Florida boundaries, *see* Pl. Mem. at 14-15, discussed below,

defendants note that Texas and the Gulf Coast of Florida have boundaries that

extend to nine nautical miles, Def. Reply Mem. at 6 (quoting *Kipp v. Amy Slate's*

*Dive Center Inc.*, 251 So. 3d 941, 946 (2018) (citing *Blome v. Aerospatiale Helicopter*

---

[12] In support of this assertion, defendants reference exhibits containing a New York
Department of Environmental Conservation webpage stating that the "State
boundary is 3 miles from shore," and a NOAA-Bureau of Ocean Energy
Management project website referencing a three-mile boundary between state and
federal waters.  Def. Reply Mem. at 6 (citing Reply Affirmation of Thomas M.
Canevari, Esq. Supp. Mot. Dismiss Am. Compl. and Strike Jury Demand ("Reply
Affirmation") at Exs. I-L, ECF Nos. 27-1, 27-2, 27-3, 27-4).

*Corp.*, 924 F. Supp. 805, 813 (S.D. Tex. 1996)).[13]  Defendants also argue that the

language of the nonapplication section of DOHSA, formerly § 7, was also amended,

currently § 30308, in a way that shows that "the statute does not support Plaintiff's

position that state law is preserved and that state law defines where the DOHSA

applies."  Def. Reply Mem. at 6.

Plaintiff asserts that in the Second Circuit, under *Long Island*, the "high

seas" begin at 12 nautical miles offshore for purposes of DOHSA based on

Proclamation 5928.[14]  Pl. Mem. at 2.  Therefore, plaintiff concludes that "DOHSA

does not apply to accidents occurring less than 12 miles from the shore."  *Id.* at 4.

Instead, plaintiff asserts that general maritime law and state law remedies are

---

[13] In the context of the Submerged Lands Act ("SLA"), the Supreme Court held that
Texas and the Gulf Coast of Florida have boundaries that are larger than three
nautical miles.  *See United States v. Louisiana*, 363 U.S. 1, 64 (1960) ("We conclude,
therefore, that pursuant to the Annexation Resolution of 1845, Texas' maritime
boundary was established at three leagues from its coast for domestic purposes."),
*supplemented sub nom. United States v. Louisiana*, 382 U.S. 288 (1965); *United
States v. Florida*, 363 U.S. 121, 129 (1960) ("We hold that the Submerged Lands Act
grants Florida a three-marine-league belt of land under the Gulf, seaward from its
coastline, as described in Florida's 1868 Constitution.").

[14] As noted, Proclamation 5928 stated that the U.S. "territorial sea . . . extends to 12
nautical miles from the baseline of the United States determined in accordance with
international law."  Proclamation No. 5928, 54 Fed. Reg. at 777.  The *Long Island*
court appears to have treated interchangeably the terms "baseline," "coast" and
"shore."  *See Long Island*, 209 F.3d at 202 ("Under Presidential Proclamation No.
5928, . . . the territorial waters of the United States extend 12 miles from the shore
of the United States."); *id.* at 213 ("[T]he effect of the Proclamation is to move the
starting point of the application of DOHSA from three to 12 miles from the coast.").
Similarly, this court does not address any geographical distinction between these
terms because none changes the fact that the Accident occurred in a location
between three and 12 nautical miles from shore.  *See* Def. Affirmation, Ex. H;
Stipulation ¶ 1.

possible within 12 miles, and that the use of New York and U.S. "navigable" waters in the pleading is appropriate under *Long Island*.  *Id.* at 5.

Plaintiff rejects defendants' view that *Long Island* is no longer controlling law.  *Id.* at 6.  Plaintiff focuses on the *Long Island* case as "binding precedent . . . under principles of horizontal stare decisis" and explains that *Helman* and cases from other circuits noted by defendants are not binding.  *Id.* at 8.  Plaintiff concedes that the Ninth Circuit's decision in *Helman* took into account interceding amendments to DOHSA since *Long Island*; however, plaintiff maintains that another circuit's interpretation of the effect of those amendments should not impact this court's decision: "It is submitted that the availability of the subsequent amendments does not predetermine the outcome of a fresh look in this circuit."  *Id.* at 7.  Instead, plaintiff states that the Second Circuit must "interpret the DOHSA amendments" itself.  *Id.* at 8.

In addition, plaintiff asserts: "[E]ven if Proclamation 5928 did not extend [] the federal territorial limits to 12 miles plaintiff would still have a wrongful death and survival claim under New York State Law because DOHSA does not apply where the state territorial waters extend beyond three miles."  *Id.* at 11-12 (citing Proclamation No. 5928, 54 Fed. Reg. 777 (Jan. 9, 1989)).  In support of this assertion, plaintiff cites New York's jurisdiction statute, N.Y. STATE LAW § 7-a (McKinney 2022), to argue that Proclamation 5928 and the customs of international law have both independently set New York's waters at 12 nautical miles:

> The jurisdiction of this state shall extend to and over, and be exercisable
> with respect to, waters offshore from the coasts of this state as follows:

(a) Those portions of the Great Lakes lying within the territorial limits of this state.

(b) The marginal sea to a line three geographical miles distant from the coastline and to any other line farther seaward therefrom hereinafter defined or recognized by the United States of America by international treaty or otherwise.

(c) The high seas to whatever extent jurisdiction therein may be claimed by the United States of America, or to whatever extent may be recognized by the usages and customs of international law or by any agreement, international or otherwise, to which the United States of America or this state may be party.

STATE § 7-a(1); Pl. Mem. at 12. Plaintiff notes that a New York Attorney General opinion cites the state statute with approval in its discussion of a construction project beyond three miles from shore. *Id.* (quoting 1984 N.Y. Op. Att'y Gen. 41, 1984 WL 186629).

To bolster the assertion that DOHSA does not apply in state waters exceeding three nautical miles, plaintiff cites § 30308 of DOHSA, as well as a Texas federal district court case and a Florida court of appeals case involving whether DOHSA applied given that state territorial waters for Texas and the Gulf Coast of Florida extend to nine nautical miles from shore. Pl. Mem. at 14-15 (quoting *Kipp*, 251 So. 3d at 948) (citing *Blome*, 924 F. Supp. at 812-14).

Further, plaintiff states: "In the unlikely event that DOSHA [sic] is held to be the sole remedy for decedent's wife and five minor children, [p]laintiff agrees with defendant that all of plaintiff's claims, *in personam* and *in rem* arise only under

admiralty jurisdiction under 28 U.S.C. § 1333 and that [p]laintiff is not entitled to a jury trial." *Id.* at 2.

### B.   Analysis

#### 1.   DOHSA: 2000 to present

In this section, the court addresses whether DOHSA applies in this case.  In doing so, the court discusses *In re Air Crash off Long Island* ("*Long Island*"), 209 F.3d 200 (2d Cir. 2000), *infra*, Section I.B.1.a, and the subsequent amendments to DOHSA in 2000 and 2006, *infra*, Section I.B.1.b, and analyzes the current text of DOHSA *infra*, Section I.B.1.c.  As discussed herein, in this case, this court concludes that DOHSA applies based on the plain language of DOHSA in light of the 2000 and 2006 amendments to DOHSA.

#### a.   *In re Air Crash off Long Island*

In *Long Island*, on interlocutory appeal, the Second Circuit addressed the question of whether DOHSA applied to the TWA Flight 800 commercial aircraft crash on July 17, 1996, approximately eight nautical miles from the shore of New York.  *Long Island*, 209 F.3d at 201-02.  Although the April 5, 2000 amendments to DOHSA were made effective retroactively to the date of the crash, the *Long Island* court decided the case before the amendments became law and therefore interpreted DOHSA as written before the amendments.[15]  At that time, DOHSA applied "on the high seas beyond a marine league from the shore."  46 U.S.C. app. § 761 (amended 2000) (current version at 46 U.S.C. § 30302).  The DOHSA provisions applicable to

---

[15] *See infra* Section I.B.1.b for a discussion of the amendments.

only commercial aviation accidents had not yet been added, *see* 46 U.S.C. app. §§

761(b), 762(b)(1), or revised, 46 U.S.C. § 30307; the provision that the *Long Island*

court interpreted applied equally to vessels and commercial airplanes.  Therefore,

even though *Long Island* did not deal with a vessel but rather a commercial

airplane, the court interpreted language that applied irrespective of the type of

accident.  *See Long Island*, 209 F.3d at 202 (quoting 46 U.S.C. app. § 761)

(interpreting language before 2000 amendment)).

Moreover, the court noted: "A marine league is three nautical miles."  *Id.* at

201 n.2.  Therefore, the amendment of "beyond a marine league" to "beyond 3

nautical miles" would not have affected the *Long Island* court's understanding of

the meaning of "a marine league" today.  *Compare* 46 U.S.C. app. § 761 (amended

2000) *with* 46 U.S.C. § 30302.  However, Congress amended DOHSA in 2000 and

2006; the court discusses *infra*, Section I.B.1.b the implications of Congress' decision

twice to use and retain "3 nautical miles" instead of 12 nautical miles or a different

distance for that section of DOHSA.[16]

The *Long Island* court held that DOHSA was inapplicable to the crash

occurring eight miles from the shore of New York.  209 F.3d at 215.  The court

reached this conclusion by applying rules of statutory construction to look to the

ordinary language of statute, and, reading "high seas" as ambiguous, undertook

further inquiry.  *Id.* at 202 (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania,*

---

[16] *See infra* Section I.B.1.b for a discussion of the other amendments to the language
of DOHSA in 2000 and 2006.

*Inc.*, 447 U.S. 102, 108 (1980)).  In reference to DOHSA, the court recalled that the

Supreme Court had said that a court "must consider 'the language of the Act as a

whole, the legislative history [of the relevant provision], the congressional purposes

underlying the Act, and the importance of uniformity of admiralty law.'"  *Id.* at 202-

03 (quoting *Tallentire*, 477 U.S. at 221).  Accordingly, the *Long Island* court's

inquiry involved an extensive review of the legislative history of DOHSA, the

Supreme Court's treatment over time of the phrase "high seas", and the "structure

and purpose" of DOHSA.[17]  *Id.* at 203-11.  The court emphasized the need to "avoid

a reading which renders some words altogether redundant."  *Id.* at 207 (quoting

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995)).

Following these principles, the *Long Island* court determined that it "should

interpret both 'high seas' and 'beyond a marine league' to have independent

meaning."  *Id.* (citing *Gustafson*, 513 U.S. at 574).  Further, the court agreed with

the plaintiff in that case that "[high seas] denotes international waters beyond both

state and federal territorial waters."  *Id.* at 208.[18]

---

[17] "The Death on the High Seas Act provided a remedy for wrongful death at sea
where none had clearly existed before."  *Long Island*, 209 F.3d at 203.

[18] The *Long Island* court found additional support for its conclusion in the section of
DOHSA that discusses foreign causes of action and includes a reference to "high
seas."  *Id.* at 208 (quoting 46 U.S.C. app. § 764); *see* 46 U.S.C. § 30306 (revising 46
U.S.C. app. § 764) ("When a cause of action exists under the law of a foreign country
for death by wrongful act, neglect, or default on the high seas, a civil action in
admiralty may be brought in a court of the United States based on the foreign cause
of action, without abatement of the amount for which recovery is authorized.").

The *Long Island* court concluded that the legislative history of DOHSA

supported the court's view on where DOHSA began to apply: "Congress intended to

exclude federal territorial waters from the scope of DOHSA because federal and

state common-law remedies already existed for deaths in those waters." *Id.* at 209.

Further, the court found: "Congress prioritized the preservation of preexisting

remedies over securing uniformity in admiralty law." *Id.* (citing *Mobil Oil Corp. v.

Higginbotham*, 436 U.S. 618, 624 (1978)).

The court in *Long Island* also quoted the Supreme Court's description of the

high seas in *United States v. Louisiana*, 394 U.S. 11, 22-23 (1969): "Outside the

territorial sea are the high seas, which are international waters not subject to the

dominion of any single nation."[19]  *Long Island*, 209 F.3d at 210 (emphasis omitted).

As to the impact of Proclamation 5928, which extended the U.S. territorial

sea from three to 12 nautical miles, the court found that "the effect of the

Proclamation is to move the starting point of the application of DOHSA from three

---

[19] In *United States v. Louisiana*, 394 U.S. 11, 14-15 (1969), the Court adjudicated cross-motions pertaining to a boundary dispute between Louisiana and the United States, not a DOHSA claim.  In addition, the Court's description of the high seas was based on "generally accepted principles of international law." *Id.* at 22-23. Last, the Court noted: "The controversy here is primarily over the location of that part of the coastline that consists of 'the line marking the seaward limit of inland waters.'" *Id.* at 15.  The Court determined that that part of the Louisiana coastline defined under the SLA should be "drawn in accordance with the definitions of the Convention on the Territorial Sea and the Contiguous Zone." *Id.* at 35.  So, the dispute involved not the demarcation of the high seas for purposes of DOHSA, but rather the designation of the boundary between which Louisiana and the United States were entitled to submerged lands.  *Id.* at 14-15.

to 12 miles from the coast." *Id.* at 213.[20]  Further, the court asserted: "Where the death occurs on the high seas . . . the [Supreme] Court has made clear that DOHSA is the exclusive remedy." *Id.* at 210 (citations omitted).  In the same way, the court stated: "Where the death did not occur on the high seas, but in territorial waters, DOHSA does not oust state remedies." *Id.*

The court held that DOHSA "does not apply to federal territorial waters" and affirmed that DOHSA "does not apply to the United States territorial waters where the crash in this case occurred." *Id.* at 215.  The court stated its conclusion repeatedly and consistently throughout the *Long Island* opinion.  *See, e.g.*, *id.* at 211, 215 ("In sum, once the United States or any state or territory thereof has asserted sovereignty over certain waters, DOHSA does not govern the remedies available in those waters.").

### b.    2000 and 2006 amendments to DOHSA

Until April 4, 2000, DOHSA by its terms applied "on the high seas beyond a marine league from the shore."  Death on the High Seas Act, ch. 111, § 1, 41 Stat. 537 (1920) (codified as amended at 46 U.S.C. app. § 761).  On April 5, 2000, that section of DOHSA was amended by the addition of a subsection pertaining

---

[20] The Supreme Court had stated previously: "In 1920, Congress passed the Death on the High Seas Act (DOHSA), 46 U.S.C. App. § 761 *et seq.* (1988 ed.), which provides a federal claim for wrongful death occurring more than three nautical miles from the shore of any State or Territory."  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 207 n.4 (1996).  However, the *Long Island* court asserted that the Supreme Court in *Yamaha* neither mentioned the "high seas" nor "considered the effect of Proclamation 5928" in reaching its determination.  *Long Island*, 209 F.3d at 211 n.17.

specifically to commercial aviation accidents whereby DOHSA would *not* apply to such accidents "on the high seas 12 nautical miles or closer to the shore"; the amendments were made effective retroactively to "any death occurring after July 16, 1996." 46 U.S.C. app. § 761(b) (current version at 46 U.S.C. § 30302). The House Conference Report for the bill stated:

> Consistent with Executive Order 5928, December 27, 1988, the territorial sea *for aviation accidents* is extended from a marine league to 12 miles. The effect of this is that the Death on the High Seas Act will not apply to planes that crash into the ocean within 12 miles from the shore of the United States. The law governing accidents that occur between a marine league and 12 miles from land will be the same as those that now occur less than a marine league from land. For those accidents that occur more than 12 miles from land, the Death on the High Seas Act will continue to apply. However, in those cases the Act is modified as in the Senate bill except that there is no $750,000 cap on damages.

H.R. REP. NO. 106-513, at 185 (2000) (Conf. Rep.) (emphasis supplied). The TWA Flight 800 crash — addressed by the Second Circuit in *Long Island* on March 29, 2000 — occurred on July 17, 1996. In addition, and retroactive to the same date, a subsection was added to a separate section of DOHSA that clarified that it *did* provide a remedy for nonpecuniary damages for commercial aviation accidents "on the high seas beyond 12 nautical miles." 46 U.S.C. app. § 762(b)(1) (current version at 46 U.S.C. § 30307(b)).

On October 6, 2006, Congress amended the subsection of DOHSA not applicable to commercial aviation accidents from "on the high seas beyond a marine league" to "on the high seas beyond 3 nautical miles" in the current version of the statute. 46 U.S.C. § 30302 (revising 46 U.S.C. app. § 761(a)). The House Report

stated: "The words '3 nautical miles' are substituted for 'a marine league' for clarity." H.R. REP. NO. 109-170, 41, *as reprinted in* 2006 U.S.C.C.A.N. 972, 988 (2005). The same legislation moved all language about commercial aviation accidents — previously in 46 U.S.C. app. § 761(b) and 46 U.S.C. app. § 762(b)(1) — to a different section of DOHSA, thereby consolidating that language in the same section. *See* 46 U.S.C. § 30307 (revising 46 U.S.C. app. §§ 761(b), 762(b)(1)-(2)). Congress also revised slightly some of the language pertinent to commercial aviation accidents from "on the high seas 12 nautical miles or closer to the shore," 46 U.S.C. app. § 761(b), to "on the high seas 12 nautical miles or less from the shore," 46 U.S.C. § 30307(c).[21]

### c.    Analysis of the current language of DOHSA

This court concludes that DOHSA applies to the Accident in this case. The interpretation of "high seas" by the *Long Island* court is not binding due to the language of the Act, as amended. The court addresses in turn: (1) the specific

---

[21] The current section of DOHSA applicable to commercial aviation accidents now reads:

> (a) DEFINITION.—In this section, the term "nonpecuniary damages" means damages for loss of care, comfort, and companionship.
> (b) BEYOND 12 NAUTICAL MILES.—In an action under this chapter, if the death resulted from a commercial aviation accident occurring on the high seas beyond 12 nautical miles from the shore of the United States, additional compensation is recoverable for nonpecuniary damages, but punitive damages are not recoverable.
> (c) WITHIN 12 NAUTICAL MILES.—This chapter does not apply if the death resulted from a commercial aviation accident occurring on the high seas 12 nautical miles or less from the shore of the United States.

46 U.S.C. § 30307.

change from "a marine league" to "3 nautical miles"; (2) other amendments to the

Act which bear upon its application here; (3) other references to "high seas" in the

Act; and (4) the meaning of "high seas" as used across the Act.

This court concludes that the change to the text of DOHSA from "beyond a

marine league," 46 U.S.C. app. § 761, to "beyond 3 nautical miles," 46 U.S.C. §

30302, does not itself mean that the Second Circuit's decision in *Long* Island not

binding.  "[D]istrict courts and other inferior courts are bound by decisions of the

Court of Appeals in the appropriate circuit unless overruled by an intervening

Supreme Court decision or other change in law." *Cartica Mgmt., LLC v. Corpbanca,*

*S.A.*, 50 F. Supp. 3d 477, 486 (S.D.N.Y. 2014) (citing *United States v. Moreno*, 94–

cr–165 (SS), 2000 WL 1843232, at *5 (S.D.N.Y. Dec. 14, 2000) (Sotomayor, J.) (citing

*Ithaca Coll. v. NLRB*, 623 F.2d 224, 228 (2d Cir. 1980)).  As the *Long Island* court

stated in its opinion, it already understood "a marine league" to be the same as "3

nautical miles."  *See Long Island*, 209 F.3d at 201 n.2 ("A marine league is three

nautical miles.").  In addition, the court explained in a footnote: "Regardless of the

bill [then pending in 2000 that would amend DOHSA's applicability to commercial

aviation accidents], we conclude, based on the record, the arguments of the parties

and the district court's decision, that this crash is not subject to DOHSA."  *Id.* at

215 n.24.  Therefore, the specific change to the language of the statute noted above

— from "a marine league" to "3 nautical miles" — did not alter the distance itself

specified in that portion of the provision and did not change the reference to the

"high seas" in the provision, which had been interpreted by the *Long Island* court.[22]

The other amendments to DOHSA in 2000 and 2006 provided for the

applicability or non-applicability of DOHSA to commercial aviation accidents, and,

therefore, themselves do not affect directly the question of whether DOHSA applies

to decedent's death following his fall from the side of the EAGLE TURIN.  *See* 46

U.S.C. § 30307 (revising 46 U.S.C. app. §§ 761(b), 762(b)(1)).  However, this court

concludes that those amendments are relevant to the extent that they shed light on

the correct meaning of the term "high seas" in the statute, which in turn does affect

whether DOHSA applies in this case.  *See K Mart Corp. v. Cartier, Inc.*, 486 U.S.

281, 291 (1988) ("In ascertaining the plain meaning of the statute, the court must

look to the particular statutory language at issue, as well as the language and

design of the statute as a whole." (citing *Bethesda Hospital Ass'n v. Bowen*, 485 U.S.

399, 403-05 (1988); *Tallentire*, 477 U.S. at 220-21); *Mastro Plastics Corp. v. NLRB*,

350 U.S. 270, 285 (1956) ("In expounding a statute, we must not be guided by a

single sentence or member of a sentence, but look to the provisions of the whole law,

and to its object and policy." (quoting *United States v. Heirs of Boisdoré*, 49 U.S.

---

[22] In *United States v. Alarcon Sanchez*, 972 F.3d 156, 170 (2d Cir. 2020), the court used that interpretation in its consideration of whether to apply the Maritime Drug Law Enforcement Act ("MDLEA").  *Alarcon Sanchez* involved whether the MDLEA applied to a speedboat drug trafficking incident 132 nautical miles from Costa Rica, rather than whether DOHSA applied, *see id.*, and, therefore, does not affect this court's interpretation of the applicability of DOHSA, as amended, between three and 12 miles from the shore of the United States.

113, 122 (1850)); *see also Long Island* at 202-03 (noting the need to consider

DOHSA "as a whole" (quoting *Tallentire*, 477 U.S. at 221)).

As noted above, in 2000, an aviation subsection was added below the non-

aviation subsection, stating that DOHSA did not apply "on the high seas 12 nautical

miles or closer to the shore."  46 U.S.C. app. § 761(b).  Apart from this section, a

separate section was added in 2000, stating that DOHSA did provide a certain

remedy "on the high seas beyond 12 nautical miles" for commercial aviation

accidents.  46 U.S.C. app. § 762(b)(1).  *See generally* 46 U.S.C. § 30307(b) (revising

46 U.S.C. app. § 762(b)(1) and using the same phrase "on the high seas beyond 12

nautical miles" in the 2006 version).  In 2006, the subsection that stated "12

nautical miles or closer" was moved to § 30307, which discusses commercial aviation

accidents, and changed to "12 nautical miles or less from the shore."  46 U.S.C.

30307(c) (revising 46 U.S.C. app. § 761(b)); *see supra* note 21.

The 2000 and 2006 amendments raise the question of why Congress twice did

not change the language of the provision applicable to accidents other than those

involving commercial aircraft from "on the high seas beyond a marine league," 46

U.S.C. app. § 761, or, subsequently, "on the high seas beyond 3 nautical miles," 46

U.S.C. § 30302, to "on the high seas beyond 12 nautical miles" if Congress

considered that Proclamation 5928 could have caused the starting point of DOHSA

to shift generally to 12 nautical miles, as the *Long Island* court concluded.[23]  *Cf.*

---

[23] The Ninth Circuit in *Helman* stated:
(footnote continued)

*Helman*, 637 F.3d at 993 (expressing doubt that "the President would have the authority to alter the remedial scheme set forth in DOHSA through a proclamation" and concluding that "basic principles of separation of powers counsel against the conclusion that Proclamation 5928 implicitly altered the scope of a congressionally defined remedial scheme"). Congress' decision not to amend the language to "12 nautical miles" is an indication that Congress considered the applicability of DOHSA in § 30302 to start at three nautical miles. *Cf.* H.R. REP. NO. 106-513, at 185 (2000) (Conf. Rep.) (extending territorial sea for aviation accidents). *See generally Helman*, 637 F.3d at 991 (noting amendment implies a presumption that DOHSA applied previously to such accidents).

This conclusion is reinforced by the text of another section of DOHSA, 46 U.S.C. § 30306, which also refers to the "high seas." Section 30306 states that a civil admiralty action can be brought in U.S. court "[w]hen a cause of action exists under the law of a foreign country for death by wrongful act, neglect, or default on the high seas." 46 U.S.C. § 30306. Section 30306 of DOHSA does not list a specific mileage following "high seas," as there is listed in §§ 30302 and 30307. The court considers this omission to be intentional. *See generally Russello v. United States*,

---

Notably then, Congress reinforced the geographic boundary specified within DOHSA's text even after Proclamation 5928's extension of the U.S. territorial waters to twelve nautical miles from shore. Had Congress intended for the boundary of the statute to shift with the extension of territorial waters, the 2006 amendment clarifying DOHSA's boundary presumably would have reflected this shift.

*Helman v. Alcoa Glob. Fasteners, Inc.*, 637 F.3d 986, 991 (9th Cir. 2011); *see also* Def. Mem. at 8.

464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (citing *United States v. Wooten*, 688 F.2d 941, 950 (4th Cir. 1982))).  The inclusion of any mileage after "high seas" in § 30302 suggests that § 30302 would apply to the high seas beginning specifically at three nautical miles from shore whereas such specificity was unnecessary for § 30306.[24] [25]

Based on the language of DOHSA and its legislative history and amendments, it is clear that § 30302 begins to apply at three nautical miles from the shore of the United States.  *See generally Long Island*, 209 F.3d at 223 (Sotomayor, J., dissenting) ("In short, when Congress inserted the term 'high seas' into DOHSA, Congress intended to incorporate a geographical boundary line - 'the high seas beyond a marine league from the shore' - which preserved state remedies in state waters; Congress did not intend to import an international legal concept of U.S. federal sovereignty subject to change." (quoting 46 U.S.C. app. § 761 (amended 2000))); *id.* at 221 (concluding that Congress "merely intended to denote a boundary line coinciding with the start of the high seas in that era.").

---

[24] *See infra* note 28.  However, this court does not determine the point at which 46 U.S.C. § 30306 begins to apply; that question is not relevant to the court's consideration of whether § 30302 applies to the Accident in this case.

[25] *But see supra* note 18.

This court seeks to construe the meaning of "high seas" uniformly across the various provisions of DOHSA. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006) ("Generally, 'identical words used in different parts of the same statute are . . . presumed to have the same meaning.'" (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005))).  Following the Supreme Court's direction, this court first notes that Congress in 2000 added to the section of DOHSA that applied to marine incidents (i.e., incidents *other than those* involving commercial aviation accidents) a subsection applicable to commercial aviation accidents with the phrase "on the high seas 12 nautical miles or closer to the shore."  46 U.S.C. app. § 761(b) (current version at 46 U.S.C. § 30307(c)).

This court, then, turns to the question of why Congress would use the term "high seas" to refer to an area 12 nautical miles *or closer* to the shore.  46 U.S.C. app. § 761(b); *see* 46 U.S.C. § 30307(c) (revising 46 U.S.C. app. § 761(b)) (stating similarly "on the high seas 12 nautical miles or less"); *Helman*, 637 F.3d at 991.  At the times of the above amendments to DOHSA and since, that entire area was part of the U.S. territorial sea.  *See* Proclamation No. 5928, 54 Fed. Reg. 777.

As noted, § 30307(c) states in part that DOHSA does not apply to deaths from commercial aviation accidents "on the high seas 12 nautical miles or less from the shore of the United States."  46 U.S.C. § 30307(c).  Congress, through this amendment, clarified the meaning of "high seas" in a way that appears inconsistent with a reading of "high seas" as having independent meaning as non-U.S. territorial waters.  *See Long Island*, 209 F.3d at 215.  Specifically, if there are no non-U.S.

territorial waters within 12 nautical miles,[26] it is unclear why Congress would also

use the phrase "on the high seas" in discussing DOHSA's non-applicability in §

30307(c).[27]   As the Second Circuit stated: "In matters of statutory interpretation,

the language of the statute 'must ordinarily be regarded as conclusive.'" *Long*

*Island*, 209 F.3d at 202 (quoting *Consumer Prod. Safety Comm'n*, 447 U.S. at 108).

This court is unable to see a way that the *Long Island* court's interpretation

of "high seas" could be applied consistent with the plain language of the statute.

*See Helman*, 637 F.3d at 991 ("[T]he wording of the amended statute [in § 30307(c)]

. . . can be interpreted only to mean that a portion of the 'high seas' as used in

DOHSA lies within twelve nautical miles from shore.").   That is particularly the

---

[26] The court notes that DOHSA explicitly withholds its application to the Great
Lakes.  *See* 46 U.S.C. § 30308(b).

[27] The Ninth Circuit noted in *Helman*, which involved a non-commercial (Navy)
helicopter crash 9.5 nautical miles from the coast of California, that, if no portion of
the high seas fell within 12 nautical miles, "the phrase 'on the high seas twelve
nautical miles or less from the shore of the United States' would be entirely non-
sensical."  *Helman*, 637 F.3d at 991.  The *Helman* court determined, based on the
plain language of § 30302, coupled with the 2000 and 2006 amendments, that
DOHSA applied beyond three nautical miles.  *See id.* at 991-92 ("[A] plain reading
of DOHSA's current text, including the recently enacted amendments, compels the
conclusion that DOHSA's boundary remains at three nautical miles from the shore
of the United States.").  The *Helman* court found support for its holding in: (1) the
2006 clarification of a marine league to be three nautical miles and without
updating the phrase to 12 nautical miles; and (2) the 2000 amendment that DOHSA
applies to commercial aviation accidents "on the high seas beyond 12 nautical miles
from [] shore" but not to such accidents "on the high seas 12 nautical miles or less
from [] shore," demonstrating that the high seas existed *within* 12 nautical miles
and that such amendment would be "wholly unnecessary" had DOHSA not applied
previously in that area.  *Id.* at 990-92 (citing *Long Island*, 209 F.3d at 224
(Sotomayor, J., dissenting)); 46 U.S.C. § 30307(b)-(c) (revising 46 U.S.C. app. §§
761(b), 762(b)(1)); *see supra* note 23.

case considering the usage of those words in DOHSA, as amended, including in 46

U.S.C. §§ 30307(b) and (c). *See generally Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)

("When Congress acts to amend a statute, we presume it intends its amendment to

have real and substantial effect." (internal citations omitted)). Rather, the *Long

Island* court's interpretation of "high seas" — as beginning at the end of the U.S.

territorial sea, such as defined by Proclamation 5928 — is not consistent with

DOHSA, as amended. *See Long Island*, 209 F.3d at 213. DOHSA, as amended,

refers explicitly to "the high seas beyond 3 nautical miles," 46 U.S.C. § 30302, "the

high seas beyond 12 nautical miles," § 30307(b), and "the high seas 12 nautical

miles or less from the shore," § 30307(c). There are no high seas within 12 nautical

miles from shore under the *Long Island* court's application of DOHSA; therefore,

the *Long Island* court's interpretation would make it impossible to read § 30307(c)

with coherence. In fact, that provision does not make sense under the *Long Island*

court's interpretation of "high seas," if these words are to be considered — as is

appropriate — to hold a consistent definition across the various sections of DOHSA.

*See generally Merrill Lynch*, 547 U.S. at 86 ("Generally, 'identical words used in

different parts of the same statute are . . . presumed to have the same meaning.'"

(quoting *IBP, Inc.*, 546 U.S. at 34)).

In sum, the court concludes that DOHSA, as amended, applies to the

Accident in this case because § 30302 of DOHSA begins to apply at three nautical

miles based on the plain language of the statute as a whole.[28]

---

[28] *See supra* note 10.  In addition, then-Judge Sotomayor concluded in dissent in *Long Island* that Congress "merely intended to denote a boundary line coinciding with the start of the high seas in that era."  *Long Island*, 209 F.3d 200, 221 (2d Cir. 2000) (Sotomayor, J., dissenting).  She argued that "DOHSA's drafters perceived 'high seas' and 'beyond a marine league' functionally to mean the same thing."  *Id.* at 223.  *See generally Helman*, 637 F.3d at 991-92 ("'High seas,' however, has no apparent, independent geographical significance, other than perhaps to emphasize that the boundary beyond which DOHSA applies is the point where U.S. territorial waters ended at the time of enactment.").  She further stated that there was nothing to indicate that Congress intended the meaning of "high seas" in DOHSA to change based on "international concepts."  *Long Island*, 209 F.3d at 216 (Sotomayor, J., dissenting).  Moreover, as noted, the majority in *Long Island* stated: "Section 7 was inserted to clarify that state waters were not subject to DOHSA."  *Id.* at 208 (majority opinion) (citing *Tallentire*, 477 U.S. at 231-32); *see* 46 U.S.C. app. § 767 ("The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter.  Nor shall this chapter apply to the Great Lakes or to any waters within the territorial limits of any State, or to any navigable waters in the Panama Canal Zone.") (current version at 46 U.S.C. § 30308).

In reviewing the legislative history, the majority noted past claims that the "high seas" language would be superfluous but also responded by explaining that the section was added to ease concerns that state remedies would not be eliminated in state waters by DOHSA.  *Long Island*, 209 F.3d at 208.  By the same logic, Judge Sotomayor pointed out that the "beyond a marine league" language could likewise be "superfluous" because the latter language could have also merely been intended as clarification:

> Similarly, it seems particularly likely that, out of an abundance of caution, Congress would have found it important to include both the term "high seas" and the explicative language "beyond a marine league

(footnote continued)

## 2.    New York's territorial waters

In addition to plaintiff's argument that DOHSA does not apply under *Long Island*, plaintiff insists that DOHSA does not apply because New York claims territorial waters up to: (1) the limit of federal territorial waters, which are 12 nautical miles pursuant to Proclamation 5928; and (2) the limit that is recognized by the "usages and customs of international law."  Pl. Mem. at 12-14; STATE § 7-a(1).[29]

The court assesses where DOHSA, a federal statute, applies.  The court does not agree with plaintiff's understanding of New York's territorial waters.  As stated above, DOHSA does not apply in state territorial waters.  46 U.S.C. § 30308(b) ("INTERNAL WATERS.—This chapter does not apply to the Great Lakes or waters within the territorial limits of a State."); *Tallentire*, 477 U.S. at 227; *see also Dooley*,

---

from the shore" to ensure that no confusion about DOHSA's application would arise.

*Id.* at 224 (Sotomayor, J., dissenting).  The dissent also pointed out that "the United States indisputably exercised sovereignty over all waters within a marine league of its coast," meaning the latter language would also be superfluous under the reading of the majority.  *Id.* at 223 (Sotomayor, J., dissenting); *see also Helman*, 637 F.3d at 992 ("[T]he interpretation of 'high seas' for which [a]ppellants advocate would subsume and render meaningless the geographic term 'beyond three nautical miles'.").  *See generally Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 106 (2011) (stating "no interpretation" of the statute at issue in that case "avoids excess language").

[29] *See supra* Section I.A.

524 U.S. at 122.[30]  Therefore, plaintiff's argument regarding New York's territorial

claims beyond three nautical miles, if valid, would mean DOHSA would not apply in

this case.

Neither federal nor state law supports the contention that New York's

boundaries extend to 12 nautical miles.

Under the Submerged Lands Act ("SLA") of 1953, "[t]he seaward boundary of

each original coastal State is approved and confirmed as a line three geographical

miles distant from its coast line or, in the case of the Great Lakes, to the

international boundary."[31]  43 U.S.C. § 1312; *see United States v. Florida*, 363 U.S.

121, 121-22 (1960).  In addition, the Supreme Court has held:

---

[30] "Section 7 was inserted to clarify that state waters were not subject to DOHSA." *Long Island*, 209 F.3d at 208 (citing *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 231-32 (1986)).  "[Section 7 of DOHSA] simply stops DOHSA from displacing state law in territorial waters."  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 216 (1996) (involving Puerto Rico's territorial waters).  Section 7 is now 46 U.S.C. § 30308, entitled "Nonapplication."

[31] The SLA continues:

> Any State admitted subsequent to the formation of the Union which has not already done so may extend its seaward boundaries to a line three geographical miles distant from its coast line, or to the international boundaries of the United States in the Great Lakes or any other body of water traversed by such boundaries.  Any claim heretofore or hereafter asserted either by constitutional provision, statute, or otherwise, indicating the intent of a State so to extend its boundaries is approved and confirmed, without prejudice to its claim, if any it has, that its boundaries extend beyond that line.  Nothing in this section is to be construed as questioning or in any manner prejudicing the existence of any State's seaward boundary beyond three geographical miles if it was so provided by its constitution or laws prior to or at the time such State

(footnote continued)

> A State's seaward boundary generally is set as a line three geographical miles distant from its coastline.  § 1312.  Waters landward of the coastline therefore are internal waters of the State, while waters up to three miles seaward of the coastline are also within a State's boundary as part of the 3-mile ring referred to as the marginal sea.

*United States v. Maine* (*Rhode Island and New York Boundary Case*), 469 U.S. 504, 513 (1985); *see also United States v. Alaska*, 521 U.S. 1, 22 (1997) ("[A] State's coastline provides the starting point for measuring its 3–mile Submerged Lands Act grant." (citing 43 U.S.C. §§ 1301(a)(2), 1311(a))).  Therefore, despite the state law language of section 7-a(1), New York's boundary was confirmed, along with the other original coastal states, through the SLA at three geographical miles.[32]  *See United States v. Florida*, 363 U.S. at 121-22.

Federal case law since Proclamation 5928 does not accommodate plaintiff's argument that New York claims additional waters under section 7-a(1), entitled

---

> became a member of the Union, or if it has been heretofore approved by Congress.

43 U.S.C. § 1312.

[32] The court notes that the term "geographical mile" has since been replaced by the term "nautical mile" in the United States, as a unit of measurement.  Nat'l Inst. of Standards & Tech., U.S. Dep't of Commerce, NIST Handbook 44, *Specifications, Tolerances, and Other Technical Requirements for Weighing and Measuring Devices*, at app. C, C-20 n.14 (John W. Barton et al. eds., 2022 ed. 2021) ("The international nautical mile of 1852 meters (6076.115 49 feet) was adopted effective July 1, 1954, for use in the United States.  The value formerly used in the United States was 6080.20 feet = 1 nautical (geographical or sea) mile.").  Neither party raises any difference between "geographical" and "nautical" miles, and any difference in measurement of the two is not relevant to the Accident in this case, which occurred approximately seven nautical miles from shore; therefore, the court does not address any discrepancy that might exist between the two terms and uses otherwise the term "nautical miles" in this opinion.

"Jurisdiction and ownership of offshore waters and lands thereunder." *See, e.g.*, *New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 527 (2d Cir. 2010); *see also Long Island*, 209 F.3d at 205, 209-10.  For example, *Atlantic States Marine Fisheries*, which dealt with a question of fishery management and regulation, referred to the "territorial sea" as "waters within three miles of shore."[33]  609 F.3d at 527.  The opinion continued: "The regulation of the territorial sea is a matter traditionally left to the states."  *Id.* at 532 (citing *Long Island*, 209 F.3d at 204).  Therefore, it appears that the Second Circuit in *Atlantic States Marine Fisheries* viewed New York's waters as extending to only three miles.

Moreover, it appears that the *Long Island* court, in general, accepted that the waters beyond three nautical miles had not been New York waters: "The parties agree that the phrase 'beyond a marine league' excludes from DOHSA's reach state territorial waters, which traditionally lay within three nautical miles from shore." 209 F.3d at 205; *see also id.* at 209-10 (describing a "band" of federal waters between state waters and the high seas).  In a footnote, the court pointed out that Texas and Florida had different boundaries; the footnote says nothing about New York.  *Id.* at 205 n.8 ("The territorial waters of Texas and Florida, however, extended three leagues seaward (roughly 10 miles), based on the boundaries extant when Texas was admitted, and Florida readmitted, into the Union." (citing *United*

_____

[33] The *Atlantic State Marine Fisheries* opinion did not mention or consider the import of Proclamation 5928 on the territorial sea.  *See New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524 (2d Cir. 2010).  The court also stated: "The federal government is responsible for regulation of the 'exclusive economic zone' — waters from three to 200 miles from shore."  *Id.* at 527.

*States v. Louisiana*, 363 U.S. 1, 64 (1960); *United States v. Florida*, 363 U.S. at 128-29)).[34]

The *Long Island* court continued: "For most of the century there was no band of United States territorial waters between state territorial waters and the high seas similar to that created by Proclamation 5928, which in 1988 extended United States territorial waters from three to 12 miles." *Id.* at 209.  Further, the court referred to earlier Second Circuit decisions, stating: "[W]hen those cases were decided, there were no federal territorial waters that lay between state territorial waters and the high seas." *Id.* at 211.  By implication, unlike in the past, the *Long Island* court appears to have considered that there were federal territorial waters between the state waters and the high seas at the time of decision.  *Id.* at 209, 211. In sum, the court was focused on Proclamation 5928, not the state waters boundary, and viewed what the court regarded as a change, based on Proclamation 5928, to be three successive boundaries: state waters, then federal territorial waters, then the high seas.  *See id.* at 209.

In addition, New York case law since Proclamation 5928 also supports the conclusion that New York's territorial waters extend only to three nautical miles. *See Town of N. Elba v. Grimditch*, 948 N.Y.S.2d 137, 141 (App. Div. 2012) ("[T]he

---

[34] In addition, the court stated: "The parties do not dispute that had the crash occurred before Presidential Proclamation No. 5928 was issued in 1988, the crash would have occurred beyond United States territorial waters so that DOHSA would apply." *Long Island*, 209 F.3d at 211.  The court also stated that "'high seas' . . . denotes international waters beyond both state and federal territorial waters." *Id.* at 208.

State's sovereign ownership includes the land under the 'marginal sea' to a line
three miles from the coast, the Great Lakes within the State's territorial
jurisdiction, Lake Champlain and the St. Lawrence and Niagara Rivers." (citing
STATE § 7-a) (other citations omitted)).

The 1984 New York Attorney General opinion cited by plaintiff states that
section 7-a "grants New York jurisdiction over those submerged lands that lie
beneath the high seas that are under jurisdiction of the United States." 1984 N.Y.
Op. Att'y Gen. 41, 1984 WL 186629. The opinion adds that "[t]he apparent purpose
of the law was to ensure that in the event the three-mile offshore limit was
increased, New York would retain jurisdiction over the high seas to the full extent
of any expansion." *Id.* The opinion reasons that the state statute "grants
jurisdiction over submerged lands dependent on the Federal offshore limit." *Id.*
However, the 1984 New York Attorney General opinion predates Proclamation 5928
and, therefore, does not address specifically the potential effect of Proclamation
5928. *See id.*

In sum, the understanding of New York's territorial waters under federal
statutory law, Second Circuit case law and New York case law, does not support the
position that New York's territorial waters have been extended to 12 nautical miles
due to Proclamation 5928, which explicitly states that it does not "extend[] or
otherwise alter[] existing Federal or State law or any jurisdiction, rights, legal

interests, or obligations derived therefrom."  Proclamation No. 5928, 54 Fed. Reg. at 777.[35]

In addition, plaintiff does not present any examples of "usages and customs of international law," STATE § 7-a(1), to suggest or support the specific notion that a sub-national political entity — here, a U.S. state — that forms part of a country has its own territorial waters that extend farther than three nautical miles, regardless of federal law.[36]

---

[35] As noted *supra* note 12, defendants provide two exhibits of New York Department of Environmental Conservation webpages that: (1) denote a "Federal Water Boundary Line" at three nautical miles from New York's coastline in a map showing "New York's Marine & Coastal District Waters," Reply Affirmation, Ex. I; and (2) include a note that "State boundary is 3 miles from shore; Federal territorial sea is from 3 nautical miles (nm) offshore to 12 nm from shore" in a "New York Offshore Planning Area Map" that was produced by the New York Department of State in July 2011, *id.*, Ex. J.  Defendants provide also three exhibits of maps from Marine Cadastre, a NOAA-Bureau of Ocean Energy Management initiative, that show: (1) a New York waters border line at three nautical miles from shore, *id.*, Ex. K; (2) a New Jersey waters border line at three nautical miles from shore, *id.*, Ex. L; and (3) both New York and New Jersey waters border lines at three nautical miles from shore, *id.*, Ex. M.  These exhibits are consistent with the court's conclusion that New York's territorial waters extend to only three nautical miles from shore; still, the court does not rely on these exhibits in reaching its conclusions.

[36] The United Nations Convention on the Law of the Sea (the "Convention") limits each party's territorial sea to 12 nautical miles.  U.N. Convention on the Law of the Sea art. 3, Dec. 10, 1982, 1833 U.N.T.S. 397.  The Convention does not define a limit for political regions that form part of a signatory party.  *See id.*  In 1988, the United States extended its territorial sea to 12 nautical miles.  Proclamation No. 5928, 54 Fed. Reg. 777 (Jan. 9, 1989).  The United States is not a party to the Convention. *See Status of the United Nations Convention on the Law of the Sea*, UNITED NATIONS TREATY COLLECTION, https://treaties.un.org/pages/ViewDetailsIII.aspx?src=TREATY&mtdsg_no=XXI-6&chapter=21&Temp=mtdsg3&clang=_en (last updated Aug. 10, 2022, 9:15 AM) (listing parties).  However, President Ronald Reagan declared that the United States will "accept and act in accordance with" the Convention as to "traditional (footnote continued)

Accordingly, the court rejects as unpersuasive plaintiff's argument that New York's territorial waters extend to 12 nautical miles, not three nautical miles. Accordingly, the court concludes that, as noted, DOHSA applies to the Accident in this case.

### 3.   DOHSA preemption considerations

For the reasons that follow, the court concludes that DOHSA preempts plaintiff's general maritime law and state law causes of action for wrongful death and survival.

Where DOHSA applies, it preempts the application of general maritime law and state law causes of action for wrongful death. *See Tallentire*, 477 U.S. at 232; *Higginbotham*, 436 U.S. at 625-26. *See generally Moragne*, 398 U.S. at 402 ("[T]he Death on the High Seas Act was not intended to preclude the availability of a remedy for wrongful death under general maritime law in situations not covered by the Act."). Where DOHSA applies, it also preempts general maritime law causes of action for survival. *Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 118, 124 (1998) ("Because Congress has chosen not to authorize a survival action for a decedent's pre-death pain and suffering [where DOHSA applies], there can be no general maritime survival action for such damages.").

---

uses of the ocean," such as "navigation and overflight." *Statement on United States Oceans Policy*, Ronald Reagan Presidential Library & Museum (Mar. 10, 1983), https://www.reaganlibrary.gov/archives/speech/statement-united-states-oceans-policy.

As to state law causes of action for survival, the Supreme Court has not said
that DOHSA preempts claims for pain and suffering.  *See Tallentire*, 477 U.S. at
215 n.1 (declining to decide "whether the DOHSA recovery for the beneficiaries'
pecuniary loss may be 'supplemented' by a recovery for the decedent's pain and
suffering before death under the survival provision of some conceivably applicable
state statute that is intended to apply on the high seas").  However, the Supreme
Court has held that loss of society is not recoverable for a claim based on § 762 of
DOHSA.  *See Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 230-31 (1996)
("Because DOHSA permits only pecuniary damages, petitioners are not entitled to
recover for loss of society.").[37]  In *Zicherman*, the Supreme Court held that "where
DOHSA applies, neither state law, *see Offshore Logistics, Inc. v. Tallentire*, 477 U.S.
207, 232-233 (1986), nor general maritime law, *see Mobil Oil Corp. v.
Higginbotham*, 436 U.S. 618, 625-626 (1978), can provide a basis for recovery of
loss-of-society damages."  516 U.S. at 230 (footnote omitted).  Subsequently, a
district judge in the Southern District of New York has interpreted *Zicherman* as
preempting survival claims for pain and suffering: "[T]he language of *Zicherman*
implies that DOSHA [sic] does not permit plaintiffs to supplement recovery under
other laws, including state law and general maritime law."  *Tandon v. United Air*

---

[37] *Zicherman* involved a commercial airplane crash but predated the amendments to
DOHSA that added separate provisions for commercial aircraft, and therefore
interpreted 46 U.S.C. app. §§ 761-762 (amended 2000), which correspond to 46
U.S.C. §§ 30302-30303 that are at issue in this case.  *See Zicherman v. Korean Air
Lines Co.*, 516 U.S. 217, 230-31 (1996).  Loss-of-society damages are a kind of
nonpecuniary damages.  *See id.* at 231.

*Lines*, 968 F. Supp. 940, 942-43 (S.D.N.Y. 1997) (raising case law from other circuits that supported this conclusion, although also noting some case law in other circuits that did not), *aff'd*, 159 F.3d 1348, 1998 WL 538102 (Table) (2d Cir. Aug. 20, 1998) (unpublished table decision) (summary order).[38]  The Fifth Circuit has reached a similar conclusion.  *See Jacobs v. N. King Shipping Co.*, 180 F.3d 713, 720 (5th Cir. 1999) (concluding that "DOHSA is [a]ppellee's exclusive remedy for Jacobs' death, and she cannot look to state law to support a recovery for Jacobs' pre-death pain and suffering").

This court concludes similarly that DOHSA preempts plaintiff's state law survival claims.  *Tallentire* did not decide the issue of whether DOHSA precluded state law survival claims.  However, when read in conjunction with the subsequent holding in *Dooley* as to DOHSA's preemption of survival actions under general maritime law and the conclusion in *Zicherman* as to DOHSA's exclusion of loss-of-society damages, it follows that the state law survival claims made by plaintiff in this case are also unavailable due to DOHSA.  *See generally Dooley*, 524 U.S. at 123 ("Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements." (quoting *Higginbotham*, 436 U.S. at 625)); *Yamaha Motor Corp., U.S.A.*, 516 U.S. at 215 ("When Congress has prescribed a comprehensive tort recovery regime to be uniformly applied, there is, we have generally recognized, no cause for enlargement of the damages statutorily provided." (citations omitted)).

---

[38] *Tandon* also predated the amendments to DOHSA.

The court concludes, as described above, that DOHSA preempts the applicability of plaintiff's other claims for wrongful death and survival under both general maritime law and state law, and a potential remedy beyond that for pecuniary loss under DOHSA.  *See* 46 U.S.C. § 30303.

## II.   Whether plaintiff pleaded properly the DOHSA cause of action

### A.   Positions of the parties

Defendants argue that the DOHSA claim is pleaded improperly because it "relies on insufficient allegations from the other causes of action and does not properly frame a *prima facie* DOHSA claim."[39]  Def. Mem. at 3.  Defendants assert that the reference in the amended complaint to the Accident occurring "in the territorial waters of the State of New York" does not support a DOHSA claim.  *Id.* at 17-18 (quoting Verified Am. Compl. ¶ 103).  Defendants insist further that the amended complaint never "allege[s] that [the] occurrence was 'on the high seas' or 'beyond 3 nautical miles from the shore of the United States.'"  *Id.* at 14.[40]

---

[39] The amended complaint states:

> Should the Court determine that plaintiff's exclusive remedies as against AET are those available under DOSHA [sic], plaintiff brings this action under DOSHA [sic], and jurisdiction would be under 28 U.S.C.§1333 admiralty and general maritime law since the occurrence causing the death happened on navigable waters while decedent was engaged in maritime commerce.

Verified Am. Compl. ¶ 2.

[40] The amended complaint states:
(footnote continued)

In addition, defendants assert that DOHSA cannot be supplemented by either general maritime law claims or state law claims for wrongful death.  Def. Mem. at 9-11 (quoting *Higginbotham*, 436 U.S. at 625 (general maritime law); *Tallentire*, 477 U.S. at 209 (state law)).  Defendants conclude that plaintiff cannot pursue the first or second causes of action because both are invalid since DOHSA, being the applicable law, provides the only possible remedy.  *Id.* at 13.[41]

Moreover, defendants insist that plaintiff impermissibly asserts diversity jurisdiction for the DOHSA claim, which, defendants maintain, should be brought under admiralty jurisdiction.  *Id.* at 14-15.  Defendants assert further that plaintiff confuses the invocation of 28 U.S.C. § 1333 by referencing "admiralty and general maritime law."  *Id.* at 15.

Plaintiff points out that both the DOHSA claim and the subject matter jurisdiction for the DOHSA claim were pleaded in the alternative.  *See* Pl. Mem. at 2-3 (noting that the Federal Rules of Civil Procedure 8(d)(2) and (3) permit pleading claims in the alternative or inconsistently with one another), 5, 16 (quoting Verified Am. Compl. ¶ 2).  Plaintiff also insists that the amended complaint contains

---

[The Sandy Hook Pilot Association] maintains a vessel, 24 hours a day / 7 days a week, 'on station' at Ambrose Light which deploys or dispatches pilots to inbound vessel via smaller launch boats.  In the late evening of August 5, 2020, Captain Murray debarked from the NEW JERSEY, which was the pilot vessel on station, and was taken by the launch boat AMERICA to meet EAGLE TURIN.

*Id.* ¶ 20.

[41] *See* discussion *supra* Section I.B.3.

"detailed allegations which would allow this court to determine subject matter jurisdiction." Pl. Mem. at 3, 24-25 (enumerating the pleadings). As to the pleading of the location of the Accident, plaintiff states: "Any requirement that a DOSHA [sic] claim requires citing the location in nautical miles offshore has been resolved by Stipulation." *Id.* at 24. In addition, plaintiff denies that the amended complaint needed to designate the DOHSA claim, and the *in rem* claim discussed in Section III, as admiralty claims under FRCP 9(h). *Id.* at 18-19.

**B.    Analysis**

In general, a DOHSA claim falls under the admiralty subject matter jurisdiction of this court. *See* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."); 46 U.S.C. § 30302 (stating "the personal representative of the decedent may bring a civil action in admiralty"). Plaintiff pleads the DOHSA claim in the alternative. Verified Am. Compl. at 21 (stating "THIRD CAUSE OF ACTION, PLED IN THE ALTERNATIVE, DOHSA NEGLIGENCE AND UNSEAWORTHINESS WRONGFUL DEATH ACTION" (emphasis omitted); Fed. R. Civ. P. 8(d)(2)-(3). In addition, plaintiff invokes admiralty jurisdiction,[42] repeats the allegations from the earlier claims, discusses

---

[42] *See supra* note 39. The court notes that plaintiff also asserts that the claim would greatly exceed the amount in controversy required for diversity jurisdiction in setting out the DOHSA claim. *See* Verified Am. Compl. ¶ 105. However, the court is perplexed as to the reason that plaintiff includes such statement under the (footnote continued)

entitlement to relief and demands such relief.  Verified Am. Compl. ¶¶ 2, 102-108; *id.* at 23; *see Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8(a).

However, the amended complaint contains insufficient factual allegations on location to support the DOHSA cause of action.  In this case, plaintiff did not state explicitly the distance from shore at which the Accident occurred.  Plaintiff is required to make more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.[43]  Plaintiff provided insufficient facts to support the allegation under DOHSA because it is not reasonably inferable from the pleading that the Accident occurred in the area that DOHSA covers.  *See Iqbal*, 556 U.S. at 678.

At various places in the amended complaint, plaintiff describes the location of the Accident.  For instance, plaintiff states that "the occurrence causing the death happened on navigable waters while decedent was engaged in maritime commerce." Verified Am. Compl. ¶ 2.  Plaintiff also alleges: "At the time of [the] incident, EAGLE TURIN was on navigable waters within the jurisdiction and territorial waters of the State of New York, and the United States of America."  *Id.* ¶ 4.

---

DOHSA claim, for which plaintiff previously raised admiralty jurisdiction.  *See id.* ¶¶ 1-2.  The court concludes that, because admiralty jurisdiction does not have an amount-in-controversy requirement, this statement does not bear upon the DOHSA claim.  *See* 28 U.S.C. § 1333.

[43] In addition, plaintiff is not required to prove that a "maritime nexus" exists.  *See Friedman v. Mitsubishi Aircraft Int'l, Inc.*, 678 F. Supp. 1064, 1065 (S.D.N.Y. 1988) ("[T]he requirement of a traditional maritime nexus is not a prerequisite to the exercise of admiralty jurisdiction pursuant to DOHSA.") (citing *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 271 n.20, 274 n.26 (1972)).

Similarly, plaintiff states: "On August 5, 2020[,] EAGLE TURIN was in the vicinity of the Port of New York and on navigable waters within the jurisdiction and territorial waters of the State of New York, and the United States of America in preparations to embark Captain Murray for docking at an oil facility in the Port of New York / New Jersey, United States of America." *Id.* ¶ 18.  Once again, plaintiff alleges that "the [A]ccident-causing [sic] decedent's death occurred in the territorial waters of the State of New York." *Id.* ¶ 103; *see id.* ¶ 3.  The amended complaint also details that Captain Murray left the Ambrose Light station on "the launch boat AMERICA to meet EAGLE TURIN." *Id.* ¶ 21.  When describing the alternative cause of action under DOHSA, plaintiff does not discuss the location of the Accident in any different terms.  *See id.* ¶¶ 102-08.

By contrast, defendants provide data for the location of the Accident at approximately seven nautical miles from the shore of New York, which the parties agree to in the Stipulation.  *See* Def. Affirmation, Ex. H; *see also supra* notes 2 and 3 and accompanying text (discussing the location data that defendants provide on NOAA charts); Stipulation ¶ 1.  As described above, the amended complaint states the location of the Accident in terms of the political boundary of New York, over which the parties disagree in this case based on their views of the *Long Island* opinion.  By contrast, the exhibit containing data on NOAA charts filed by defendants and the Stipulation both provide the location of the Accident in terms of miles from shore.  *See* Def. Affirmation, Ex. H at 4; Stipulation ¶ 1.  The location information is not only indisputable and verifiable, but also allows the court to

determine whether the Accident falls within the zone in which DOHSA, 46 U.S.C. §
30302, applies.  *See supra* note 2.  Further, the court takes judicial notice that the
Accident occurred approximately seven nautical miles from the shore of New York.
*See supra* notes 2 and 3 and accompanying text; *see also* Stipulation ¶ 1; Fed. R.
Evid. 201.

The facts in the amended complaint, emphasizing as they do that the
Accident occurred in New York waters and in the vicinity of the Port of New York,
do not allow the court reasonably to infer potential liability under DOHSA, which
does not apply in state territorial waters.  46 U.S.C. § 30308; *see Iqbal*, 556 U.S. at
678.  In sum, the court cannot conclude, based on the factual information pleaded in
the amended complaint that plaintiff would be entitled to relief under DOHSA in
the alternative.

However, as stipulated by the parties and previously ordered by this court,
plaintiff may file a second amended complaint that pleads properly the DOHSA
claim.  *See* Stipulation ¶ 3.

## III.   Whether plaintiff pleaded properly the *in rem* cause of action

### A.   Positions of the parties

Defendants argue that the *in rem* claim — for which there is exclusive
admiralty jurisdiction — should be dismissed because it "has no valid causes of
action to attach to, may only be brought under the Court's [a]dmiralty and
[m]aritime [j]urisdiction, and [p]laintiff has not designated any claims as admiralty
and maritime claims, has not invoked Rule 9(h), and thus cannot obtain *in rem*

remedies on the face of the pleading." Def. Mem. at 3-4. Further, defendants argue that plaintiff did not "properly frame[] its allegations over the vessel *in rem*." *Id.* at 19.

Defendants assert that the LOU serves as a substitute for the EAGLE TURIN, such that the maritime lien is against the LOU and there is "*in rem* jurisdiction over the amount in the LOU, but not over the EAGLE TURIN itself." *Id.*; *see supra* note 7.

In addition to raising the same jurisdictional pleading issue highlighted above with respect to 28 U.S.C. § 1333, defendants assert that plaintiff should have, but did not designate the *in rem* claims properly. Def. Mem. at 20. Defendants imply that the jury demand is evidence that the claims have not been designated as maritime and admiralty claims. *Id.*

Moreover, defendants insist that "even though . . . the DOHSA and the *in rem* causes of action arise in admiralty, the Plaintiff's Amended Complaint has not designated its causes of action as admiralty claims, instead intentionally electing to proceed on the law side." *Id.* at 21.

In addition, defendants argue: "Plaintiff misapprehends the nature and extent of *in rem* jurisdiction and remedies, and that the Court may not award relief from the substituted security for state law claims against the vessel since those claims do not entitle Plaintiff to *in rem* relief." Def. Reply Mem. at 1.

Defendants assert that plaintiff erred in pleading *in rem* against the EAGLE TURIN: "The [Amended] Complaint does not provide Plaintiff with a[n] *in rem* claim against the M/T EAGLE TURIN, and there is no remedy to obtain." *Id.* at 9.[44]

Plaintiff argues that the amended complaint did not need to invoke FRCP Rule 9(h) since the sole jurisdictional basis possible for the DOHSA claim — if DOHSA applies — and the *in rem* claim is admiralty.  Pl. Mem. at 16.  So, plaintiff asserts, designation of the DOHSA and *in rem* claims is not required because only admiralty jurisdiction is pleaded.  *Id.* ("The Amended Complaint states that if DOHSA is held applicable, then plaintiff's only alleged basis of jurisdiction is *in rem* against the EAGLE TURIN and *in personam* in admiralty under, and against AET, both plead [sic] under 28 U.S.C. §1333. . . .  Since plaintiff pled that if DOHSA is held applicable, jurisdiction will be based only on admiralty, a 9(h) designation need not be made.").  According to plaintiff, the amended complaint needed only to plead facts to satisfy the "two prong test" for admiralty tort jurisdiction based on the location being "navigable waters" and the "'nexus or relationship' in its potentially

---

[44] Defendants continue:

> To the extent that Plaintiff seeks a jury trial on state law claims brought in diversity, this demonstrates that Plaintiff is not seeking Admiralty remedies.  Assuming *arguendo* that Plaintiff could succeed on a diversity claim and the matter is tried before a jury, Plaintiff would not be entitled to a Judgment against the vessel *in rem* because of its decision not to pursue *in rem* remedies by electing to have a jury and proceeding at law.  While Plaintiff could have invoked Admiralty and alleged claims permitting a Judgment *in rem*, the complaint fails to do so.

Def. Reply Mem. at 10.

disruptive effect on maritime commerce." *Id.* at 19-20 (citing Thomas J.

Schoenbaum, *Admiralty and Maritime Law* § 3.5 (6th ed. 2018)).

Plaintiff agrees that the "LOU security or 'res' substitutes for the vessel." *Id.*

at 21. As to *in rem* jurisdiction over the EAGLE TURIN, however, plaintiff points

to the LOU itself, which clarifies that defendants agreed to an appearance *in rem*.

*Id.*; *see* LOU ¶ 1. Based on this conclusion, plaintiff maintains that defendants

waived the issue of the ship itself being physically within the court's

jurisdiction. Pl. Mem. at 21-22 (noting an exception that "'[i]f the res is absent from

the district, this . . . jurisdictional defect can be waived if the owner of the res

voluntarily appears' and 'waive[s]' the 'presence requirement'") (quoting *Leopard

Marine & Trading Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 183 (2d Cir. 2018)).

## B.   Analysis

As noted, the Federal Rules of Civil Procedure state that a claim may be

designated as an admiralty or maritime claim if it falls under both admiralty

jurisdiction and another source of subject matter jurisdiction. Fed. R. Civ. P.

9(h)(1). However, "[a] claim cognizable only in the admiralty or maritime

jurisdiction is an admiralty or maritime claim for those purposes, whether or not so

designated." *Id.* Plaintiff did not need to designate the *in rem* claim against the

EAGLE TURIN under FRCP 9(h) because this claim can be brought only under

admiralty jurisdiction. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 446-47 (1994)

("An *in rem* suit against a vessel is, we have said, distinctively an admiralty

proceeding, and is hence within the exclusive province of the federal courts." (citing

*The Moses Taylor*, 71 U.S. 411, 431 (1866)); *Leopard Marine & Trading, Ltd.*, 896

F.3d at 187 ("Pursuant to the Judiciary Act of 1789, the federal courts have

exclusive jurisdiction over in rem actions within admiralty jurisdiction." (citations

omitted)); *Dluhos v. Floating & Abandoned Vessel, Known as New York*, 162 F.3d

63, 66 (2d Cir. 1998) ("[I]t is a well-settled proposition that actions brought against

vessels in rem sound exclusively in admiralty.").  *See generally Leopard Marine &*

*Trading, Ltd.*, 896 F.3d at 183 (quoting *Republic Nat'l Bank of Miami v. United*

*States*, 506 U.S. 80, 87 (1992); *Continental Grain Co. v. The FBL-585*, 364 U.S. 19,

23, (1960)) (explaining that "[t]he Supreme Court has referred to in rem jurisdiction

as a device of legal fiction intended to promote access to courts").

Plaintiff brings this fourth cause of action based on a "valid maritime lien

against the EAGLE TURIN."  Verified Am. Compl. ¶ 110.  The Second Circuit has

explained that "a maritime lien may be enforced only through an action in rem—

that is, by proceeding against the vessel itself."  *Leopard Marine & Trading, Ltd.*,

896 F.3d at 182 (citations omitted); *see* Fed. R. Civ. P. C(1)(a) ("An action in rem

may be brought . . . [t]o enforce any maritime lien."); *see also Rainbow Line, Inc. v.*

*M/V Tequila*, 480 F.2d 1024, 1027-28 (2d Cir. 1973).  In addition, the Second

Circuit has held that seizure or consent may suffice for *in rem* jurisdiction:

> To obtain jurisdiction . . . a court must either seize the *res* or obtain the
> consent of the owner or other person asserting a right of possession.
> This principle is demonstrated by the many cases in which *in rem*
> jurisdiction has been held waived without seizure when the owner
> appears without contesting jurisdiction.

*Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC* ("*Hapag-Lloyd*"), 814 F.3d

146, 153-54 (2d Cir. 2016) (citations omitted).  As the Second Circuit later clarified

as to *Hapag-Lloyd*: "We held that the consent of a vessel's owner to the adjudication

of rights in a maritime lien was sufficient for the court to exercise in rem

jurisdiction, regardless of whether the vessel itself was present."  *Leopard Marine &*

*Trading, Ltd.*, 896 F.3d at 183.

In this case, plaintiff chose to bring the fourth cause of action *in rem* against

the EAGLE TURIN.  Verified Am. Compl. at 22.  As based on *Leopard Marine &*

*Trading, Ltd.*, the court sees no issue with the *in rem* action being brought against

the EAGLE TURIN and not the LOU itself.  The LOU states specifically that, in

exchange for not "arresting, attaching or otherwise seizing, restraining or

detaining" the EAGLE TURIN, LOU at 1, the "Vessel and/or owners consent" to *in*

*personam* and *in rem* jurisdiction for an action in this district court for damages

relating to Captain Murray's death, *id.* ¶ 1.[45]  Moreover, damages for any judgment

against the EAGLE TURIN would be obtained from the $19,900,000 in damages

provided as security by the LOU.  *Id.* ¶ 2.  *See generally Mackensworth v. S.S. Am.*

*Merch.*, 28 F.3d 246, 249 (2d Cir. 1994) (noting an agreement to "provide a Letter of

Undertaking as substitute security for the lien asserted by [the plaintiff] in his *in*

---

[45] *See supra* note 9.  In addition, defendants have not moved to dismiss for lack of
personal jurisdiction under FRCP 12(b)(2).  Further, the LOU was agreed to before
this lawsuit was filed; therefore, many of the procedures for judicial authorization
and process in Rule C of the Supplemental Rules for Admiralty or Maritime Claims
and Asset Forfeiture Actions, Fed. R. Civ. P. C(3), which apply to *in rem* actions,
Fed. R. Civ. P. A(1)(A)(ii), were not applicable.

*rem* action"); *Ferrostaal, Inc. v. HACI HASSAN YARDIM*, No. 03 CV 4886 (GBD), 2006 WL 2819585, at *3 (S.D.N.Y. Sept. 29, 2006) ("A letter of undertaking confers *in rem* jurisdiction over a vessel, located outside of the forum's territorial jurisdiction, where the vessel is initially arrested and the parties expressly consented to the court's jurisdiction." (citing *Mackensworth*, 28 F.3d at 252-53)).[46]

Plaintiff alleges negligence, negligence per se, unseaworthiness and unseaworthiness per se for wrongful death and survival.  Verified Am. Compl. at 22.  In setting out jurisdiction and venue, plaintiff alleges that jurisdiction against the EAGLE TURIN is "*in rem*, under 28 U.S.C. §1333 and DOHSA."  *Id.* ¶ 1.  Plaintiff does not mention DOHSA again specifically when setting out the fourth cause of action; however, plaintiff does repeat all earlier allegations.  *See id.* ¶¶ 109-112.

In addition, there is some confusion between the parties as to the law under which plaintiff's *in rem* cause of action is alleged.  *See id.*; Def. Mem. at 19-21; Pl. Mem. at 20-23; Def. Br. at 9-10.  Because this court concludes that DOHSA applies, *see supra* Section I.B, plaintiff's *in rem* claims can be brought only as far as they assert a cause of action under DOHSA, for which the LOU would serve as the security to provide any pertinent damages.  *See generally* 46 U.S.C. § 30302 (noting an individual can "bring a civil action in admiralty against the person or vessel

---

[46] In *Ferrostaal, Inc.*, a district judge in the Southern District of New York also stated, similar to the facts of this case, that "[i]n the *in rem* action, plaintiff did not seize the vessel, but received a substitute for the *res* in the letter of undertaking." *Ferrostaal, Inc. v. HACI HASSAN YARDIM*, No. 03 CV 4886 (GBD), 2006 WL 2819585, at *4 (S.D.N.Y. Sept. 29, 2006) (citing *Panaconti Shipping Co., S.A. v. M/V Ypapanti,* 865 F.2d 705, 707-08 (5th Cir. 1989)).

responsible"); Fed. R. Civ. P. C(1)(b) ("An action in rem may be brought . . .

[w]henever a statute of the United States provides for a maritime action in rem or a

proceeding analogous thereto.").  As noted for the first and second causes of action,

any assertion of *in rem* claims with respect to general maritime law actions for

wrongful death or survival, or to state law actions for wrongful death or survival is

preempted by DOHSA.  *See supra* Section I.B.3.

      Accordingly, plaintiff pleaded improperly the *in rem* cause of action, to the

extent that it is pleaded to seek general maritime law and state law remedies.  As

stipulated by the parties and previously ordered by this court, plaintiff may file a

second amended complaint that pleads properly the *in rem* claim under DOHSA.

*See* Stipulation ¶ 3.

## IV.  Availability of jury trial

### A.  Positions of the parties

      Defendants assert that DOHSA is a claim under admiralty subject matter

jurisdiction and, as plaintiff's only remedy, does not permit a trial by jury.  Def.

Mem. at 3-5, 21-22 (quoting *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354,

414 n.24 (1959)).[47]  Defendants also argue that, because DOHSA applies in this

---

[47] Defendants quote text from *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354,
414 n.24 (1959)).  The court notes that the quoted text appears in note 28, not note
24.  *See Romero*, 358 U.S. at 371 n.28 ("Neither the Suits in Admiralty Act of 1920, .
. . nor the Death on the High Seas Act, 41 Stat. 537 (1920), 46 U.S.C. ss 761—767,
46 U.S.C.A. ss 761—767, allows a jury trial in personal injury cases.").

case, the nonapplication provision of DOHSA, § 30308, does not permit a jury.[48]  *Id.*
at 22 ("Thus, a natural reading of §7 is that a state statute providing a wrongful
death right of action traditionally unavailable at common law would not be 'affected'
by DOHSA in the sense of being rendered an incompetent means of invoking state
jurisdiction, but the state statute's substantive provisions would not, by virtue of
the saving provision 'extend as a conduct-governing enactment on the high seas' if
in conflict with DOHSA's provisions." (quoting *Tallentire*, 477 U.S. at 223
(interpreting § 7, a prior incarnation of § 30308))).

 Plaintiff concedes that "if DOHSA is held to be the only cause of action, there
is no entitlement to a jury trial."  Pl. Mem. at 23.

**B. Analysis**

 As an initial matter, since the court has determined that DOHSA is the only
cause of action that survives, as plaintiff concedes, she is not entitled to a jury trial.
"The right of trial by jury as declared by the Seventh Amendment to the
Constitution—or as provided by a federal statute—is preserved to the parties
inviolate."  Fed. R. Civ. P. 38(a).  However, the Federal Rules of Civil Procedure also
state: "ADMIRALTY AND MARITIME CLAIMS.  These rules do not create a right to a jury
trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)."[49]
Fed. R. Civ. P. 38(e).  In addition, "[t]he trial on all issues so demanded must be by

---

[48] "[T]his chapter does not affect the law of a State regulating the right to recover
for death."  46 U.S.C. § 30308 (revising 46 U.S.C. app. § 767).

[49] *See supra* Section III.B for the language of FRCP 9(h).

jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a).

As described *supra* Section I.B, because DOHSA applies, plaintiff's claims under general maritime law and state law are preempted. When jury-triable claims and admiralty claims for which no jury trial is required arise from the same facts, all claims must be submitted to a jury. *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 21 (1963) ("[W]e hold that a maintenance and cure claim joined with a Jones Act claim must be submitted to the jury when both arise out of one set of facts."). No such jury-triable claims remain in this case; in addition, the DOHSA claim was pleaded in the alternative. Further, no claims for which diversity jurisdiction was pleaded survive, since DOHSA preempts them. Plaintiff's only valid remaining claims would be pursuant to DOHSA under the court's admiralty jurisdiction. DOHSA on its own does not call for a jury.[50] *Friedman v. Mitsubishi Aircraft Int'l, Inc.*, 678 F. Supp. 1064, 1066 (S.D.N.Y. 1988) ("[A]s the Fifth Circuit concluded on remand in *Tallentire*, . . . since DOHSA provides a remedy in admiralty, admiralty principles

---

[50] A district judge in the Southern District of New York has explained: "While at least one court has held that the existence of diversity may be relevant in a DOSHA [sic] action, in that case there was a Jones Act claim which provided a separate and independent basis for a trial by jury." *Friedman v. Mitsubishi Aircraft Int'l, Inc.*, 678 F. Supp. 1064, 1066 (S.D.N.Y. 1988) (citing *Red Star Towing & Transp. Co. v. "Ming Giant"*, 552 F. Supp. 367, 374 (S.D.N.Y. 1982)); *see also Red Star Towing & Transp. Co.*, 552 F. Supp. at 371 ("Where claims with independent jurisdictional basis normally carrying a jury right, such as plaintiff's Jones Act claim, are joined with admiralty claims arising out of the same transaction or occurrence, all claims may be tried to a jury."), 375 ("[A]lthough juries were conventionally not employed in admiralty suits, the words of [DOHSA] express no intention to forbid the use of juries either in diversity cases or in the admiralty.").

are applicable and a DOHSA plaintiff has no right to a jury trial of wrongful death claims." (citing *Tallentire v. Offshore Logistics, Inc.*, 800 F.2d 1390, 1391 (5th Cir. 1986); *Heath v. Am. Sail Training Ass'n*, 644 F. Supp. 1459, 1471-72 (D.R.I. 1986))); *see Tallentire*, 800 F.2d at 1391 ("Mrs. Tallentire's action under DOHSA is cognizable only in admiralty and she is not entitled to a jury trial." (citing *Curry v. Chevron, U.S.A.*, 779 F.2d 272, 274 n.1 (5th Cir. 1985))).

Finally, plaintiff does not contest that, if DOHSA is the only valid claim remaining, plaintiff is not entitled to a jury trial.  Pl. Br. at 23.

The court concludes that plaintiff is not entitled to a jury trial.

## CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part defendants' motion to dismiss for failure to state a claim.  The court GRANTS defendants' motion to strike the jury trial demand.  The court DENIES defendants' request for costs and fees.

If plaintiff seeks to file a second amended complaint, pursuant to the stipulation of the parties so ordered on August 26, 2022, plaintiff must file such second amended complaint within 30 days of this opinion and order.

Further, in light of the public health crisis, the court will not be holding an initial pretrial conference.  Within 14 days after the filing of the second amended complaint, the parties shall file a joint letter, not to exceed three (3) pages, providing the following information in separate paragraphs:

1. A brief description of the nature of the action and the principal defenses thereto;

2. A brief explanation of why jurisdiction and venue lie in this Court.  If any party is a corporation, the letter shall state both the place of incorporation and the principal place of business.  If any party is a partnership, limited partnership, limited liability company or trust, the letter shall state the citizenship of each of the entity's members, shareholders, partners and/or trustees;

3. A brief description of all contemplated and/or outstanding motions;

4. A brief description of any discovery that has already taken place, and/or that which will be necessary for the parties to engage in meaningful settlement negotiations;

5. A brief description of prior settlement discussions (without disclosing the parties' offers or settlement positions) and the prospect of settlement;

6. The estimated length of trial; and

7. Any other information that the parties believe may assist the court in advancing the case to settlement or trial, including, but not limited to, a description of any dispositive issue or novel issue raised by the case.

The parties shall also jointly submit to the court a proposed case management plan and scheduling order.  A template for the order is available at https://www.cit.uscourts.gov/content/judge-timothy-m-reif.  The status letter and the proposed case management plan should be filed electronically, consistent with Section 13.1 of the Court's Electronic Case Filing Rules & Instructions, available at https://nysd.uscourts.gov/rules/ecf-related-instructions.

SO ORDERED.

/s/ Timothy M. Reif

Dated: August 26, 2022
New York, New York

Timothy M. Reif, Judge
United States Court of International Trade
*Sitting by Designation*
United States District Court for the
Southern District of New York